IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Barbara Kane, Kathleen Schlauch, Nadine Wilson, Edward Colbert, Tony Bari, and HOME Line, a Minnesota non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department Of Housing And Urban Development,<br><br>Defendant. | Civil Action No. _____<br><br><br><br>**COMPLAINT** |

## I.   INTRODUCTION

1.   Shingle Creek Towers is a 122-unit apartment building in Brooklyn Center Minnesota which is the recipient of federal, state, county and city subsidies intended to maintain its availability as affordable housing for low income residents.  The U.S. Department of Housing and Urban Development (HUD) is foreclosing on the project mortgage and, contrary to federal statutes and its own regulations, proposes to eliminate current rent limits and other tenant protections after the foreclosure sale.  Individual Plaintiffs are current residents dependant on existing rent restrictions and tenant protections that HUD proposes to alter or eliminate.  HUD's proposed actions will harm Plaintiff HOME Line's ongoing efforts to organize and assist project residents.  HUD's actions are arbitrary and capricious as well as contrary to federal law and Plaintiffs seek declaratory and injunctive relief.

## II.   JURISDICTION

2.   Jurisdiction over Plaintiffs' federal claims is conferred upon this court by 28 U.S.C. § 1331.

1

3. This court is empowered to grant declaratory relief pursuant to 28 U.S.C. § 2201, and further necessary or proper relief pursuant to 28 U.S.C. § 2202 and by 5 U.S.C. § 706.

4. To the extent sovereign immunity is applicable to Defendant HUD, it has been waived by 5 U.S.C. § 702 and 12 U.S.C. § 1702.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiffs' claims arose in this district.

### III.     PARTIES

6. The individual Plaintiffs, low income residents of Shingle Creek Towers, 6221 Shingle Creek Parkway, Brooklyn Center, Minnesota, are: Barbara Kane (apartment 1005), Kathleen Schlauch (apartment 1205), Nadine Wilson and Edward Colbert (apartment 1109), and Tony Bari (apartment 1206). They seek to retain current limitations on rent increases and other tenant protections the loss of which is threatened by the proposed terms of HUD's foreclosure sale, which are contrary to federal statutes.

7. Plaintiff HOME Line is a Minnesota non-profit corporation whose corporate mission includes provision of tenant organizing assistance as well as educational and advocacy in order to improve public and private policies relating to rental housing, involving affected tenants in the process. HOME Line has assisted with tenant organizing in the building since 2002. The statutorily protected right of tenants of subsidized housing to organize and participate in management has been critical to these efforts. That right, as well as other federal tenant protections critical to HOME Line's ability to assist Shingle Creek tenants from unjustified rent increases and groundless evictions, will be lost if HUD is permitted to foreclose on the terms which the agency currently proposes, which are contrary to federal law. HUD's actions injure

HOME Line as an organization by interfering with its mission and activities and by causing it to divert resources from other activities to counter HUD's illegal actions.

8.      Defendant HUD is foreclosing on the Shingle Creek mortgage pursuant to the Federal Multifamily Foreclosure Act, 12 U.S.C. Section 3701 et seq. (MFA).  In foreclosing on the mortgage, HUD is subject to the provisions and requirements of the MFA, the Federal Multifamily Disposition Act 12 U.S.C. Section 1701z-11 (MDA) and the regulations promulgated under those statutes at 24 C.F.R. Parts 27 and 290.

## IV.     FACTS

9.      Shingle Creek Towers was developed as federally subsidized housing under Section 236 of the National Housing Act, 12 U.S.C. Section 1715z-1.  Under that program, the mortgage was federally insured and HUD provided a subsidy to reduce the effective interest rate to one percent. Under the Section 236 program, and the Use Agreement currently in effect for Shingle Creek, rent increases are permitted only to cover actual and reasonable increases in project expenses.  Residents of Section 236 projects are also protected by federal statute and regulation from eviction without cause and are guaranteed the right to form tenant organizations and to participate in project management.  24 C.F.R. Parts 245 and 247.

10.     In 2002 the owner sought to leave the program.  A preservation effort resulted in sale of the project.  The project was refinanced under Section 236(e), again with HUD mortgage insurance and with the interest rate subsidy left in place.  At that time the project also received federal low income housing tax credits, and $1.9 million in subsidies from the State, County and City of Brooklyn Center in order to assure an extended period of affordability.  Under the tax

3

credit program, incomes are limited to 60% of area median income and residents are protected from eviction without cause.

11. As required by the Section 236(e) preservation program, a Use Agreement was imposed by HUD which extended the income, rent, and operating restrictions five years beyond the original mortgage maturity date. The Use Agreement is in effect through September 2019 and requires the owner to comply with the income, rent, and operating restrictions of the Section 236 program and the tax credit program. Apart from the Use Agreement, the tax credit restrictions apply for thirty years.

12. The buyer in 2002 defaulted on the HUD-insured mortgage, and HUD paid the lender's insurance claim and became the project's mortgagee.

13. HUD has instituted foreclosure of the Shingle Creek mortgage pursuant to the Federal Multifamily Foreclosure Act which provides at 12 U.S.C. § 3706(b):

> (1) Except as provided in paragraph (2)(A), the Secretary may require, as a condition and term of sale, that the purchaser at a foreclosure sale under this chapter agree to continue to operate the security property in accordance with the terms of the program under which the mortgage insurance or assistance was provided, or any applicable regulatory or other agreement in effect with respect to such property immediately prior to the time of foreclosure sale. (2)(A) In any case where the majority of the residential units in a property subject to such a sale are occupied by residential tenants at the time of the sale, the Secretary shall require, as a condition and term of sale, any purchaser (other than the Secretary) to operate the property in accordance with such terms, as appropriate, of the programs referred to in paragraph (1).

14. The majority of the Shingle Creek apartments are occupied and HUD is therefore bound by the mandatory requirement of 12 U.S.C. § 3706(b)(2)(A) that HUD require a foreclosure sale buyer to operate the property in accordance with the terms of the program under which the project was assisted and any regulatory agreement in effect prior to forclosure.

15. It is clear from legislative history that Congress intended that buyers at foreclosure be required to operate the project under the terms of the original program so as to "assure wherever possible and practicable that the multifamily properties be preserved as low- or moderate-income rental housing." House Conference Report 97-208, page 715. Absent this requirement, all federal controls over project operation would be lost at a foreclosure sale.

16. In addition, 12 U.S.C. Section 1701z-11(k)(2) provides:

> The Secretary may not approve the sale of any subsidized project-(A) that is subject to a mortgage held by the Secretary…unless such sale is made as part of a transaction that will ensure that the project will continue to operate, at least until the maturity date of the loan or mortgage, in a manner that will provide rental housing on terms at least as advantageous to existing and future tenants as the terms required by the program under which the loan or mortgage was made or insured prior to the proposed sale of the project.

17. Because HUD must approve all foreclosure sales pursuant to 12 U.S.C. Section 1701z-11(c)(3)(B), the requirement of Section 1701z-11(k)(2) applies to foreclosure sales and imposes an obligation very similar to that of Section 3706, except that there is no "as appropriate" language.

18. HUD's regulations implementing Section 3706 specify eight specific sets of factors which HUD must consider in determining the provisions of the pre-foreclosure assistance programs that are to be imposed on foreclosure sale buyers. 24. C.F.R. Section 27.20. These factors include the history, financial and physical analyses of the project; income of residents and likelihood of displacement; need for and availability of affordable housing in the area and characteristics of comparable housing; and eligibility of residents for additional assistance and availability of such assistance. *Id.*

19. Regardless of whether the regulation at 24 C.F.R. Section 27.20 adequately encompasses the Congressional intent that affordable projects be preserved wherever possible, it

5

at least imposes on HUD the obligation to consider, in every case, factors that are highly project-specific. Despite this requirement, HUD routinely, and improperly, imposes the same restrictions on all foreclosure sale buyers of subsidized housing. These standard restrictions limit rents for new tenants to 30% of 80% of area median income. In this metropolitan area, that is currently $1,289 for a two-bedroom apartment, an absurdly high number. The standard Use Agreement eliminates protections for eviction without cause and for tenant organizing and participation in management.

20. When HUD originally noticed the foreclosure sale for May 14, 2010, the foreclosure material indicated that HUD would replace all existing restrictions on project operations with a new Use Agreement. This new agreement set new rent limits that were so much higher than current rents, and so much less restrictive than the Section 236 rent increase controls, as to be meaningless. There was no protection from eviction without cause and no right to organize and participate in project management.

21. A number of residents, through their attorneys, complained that the Use Agreement proposed by HUD did not meet the requirements of Section 3706(b) of the Multifamily Foreclosure Act. In response, HUD cancelled the foreclosure sale. In December 2010, the HUD General Counsel's Office informed the residents' attorneys that HUD was developing a "comprehensive response" to the issues raised with respect to the foreclosure of the Shingle Creek mortgage.

22. Nevertheless, on January 25, 2011, HUD sent a letter announcing the new terms of the foreclosure sale. There were some changes in the rent limits but these still left limits so far above current rents and so much less effective than the Section 236 limits on rent increases as to

be meaningless. There was still no protection from eviction without cause and no right to organize and participate in project management.

23. HUD established March 24, 2011, as the new date for the foreclosure sale. The foreclosure sale is not actually completed on that date. A high bidder is selected, but this bidder must still be approved by HUD after a review of ownership qualifications before a deed transferring the property is executed.

24. Under the proposed Use Agreement, rents for 99 of the 122 units are limited to the least of 30% of 50% of area median income ($735 for one person), the Section 8 voucher payment standard ($790 for a 1-bedroom apartment) or "market rents." The "market rent" is not a meaningful limit on rents, since the market rent is whatever an applicant will pay. The current 1-bedroom rent ranges from $575 to $631, far below the "limits" in the new Use Agreement and, under the Section 236 program, can be increased only to cover actual increases in expenses.

25. HUD's standard Use Agreement following foreclosure of the mortgage on a subsidized project routinely permits rents after foreclosure of subsidized projects as high as 30% of 80% of area median income. This is permitted on 23 of the Shingle Creek units. This violates 12 USC Sections (e)(1)(A)(iii) and (b)(5)(A)(i) which require HUD to ensure that all very low income residents pay no more than 30% of 50% of area median income for the remaining useful life of the project.

26. The importance of the statutory and regulatory protections for tenant organizing were demonstrated on March 4, 2011, when the management unilaterally cancelled a meeting called by tenant organizers to discuss the foreclosure. Management immediately reversed its position when confronted with a complaint from attorneys based on the HUD regulations.

Without the protection of these regulations, such arbitrary management actions will be permissible in the future.

27. HUD's letter claimed that the terms of the Use Agreement were those HUD had determined to be "appropriate" under the terms of Section 3706(b). But there was no explanation at all of why HUD considered it appropriate to eliminate all of the tenant protections provided tenants under the Section 236 program. There was no explanation of why the factors which HUD is required to consider under its own regulations dictated elimination of all of these tenant protections.

28. On January 31, 2011, the residents' attorneys sent a Freedom of Information Act request to HUD asking for documentation that HUD had considered each of the factors set out in the agency regulations in reaching a determination that it was appropriate to eliminate all of the tenant protection provisions of the Section 236 program. Although HUD's regulations require an agency response to all FOIA requests within 20 business days, there has been no response to date.

29. On March 9, 2011, the Plaintiffs' attorneys sent another letter to HUD reciting the ways in which the proposed sale violates federal statutes and regulations and indicating that Plaintiffs would litigate if HUD did not reconsider. There has been no reply to date.

30. Plaintiffs face an imminent threat of loss of federally protected rights. They have no adequate remedy at law and seek injunctive and declaratory relief.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## HUD's proposed foreclosure violates 12 U.S.C. Section 3706(b)

31.     HUD's proposed foreclosure sale does not comply with the requirements of 12 USC Section 3706(b) in that HUD is not requiring, as a condition of sale, that the buyer operate the property in accordance with the terms of the current 236 program and regulatory agreement. Therefore, Plaintiffs are entitled to have a reviewing court set aside the sale pursuant to Section 706(2) of the APA.  Alternatively, under Section 706(1) the court may compel HUD to comply with the statute in carrying out the foreclosure.  Under Section 705, the Court may enjoin the sale pending final determination.  Plaintiffs are entitled to declaratory relief pursuant to 5 U.S.C. Section 706 and 42 U.S.C. Section 2201.

## SECOND CAUSE OF ACTION

### HUD's proposed foreclosure violates 12 U.S.C. Section 1701z-11(k)(2).

32.     HUD's proposed foreclosure sale does not comply with the requirements of 12 U.S.C. Section 1701z-11(k)(2) in that HUD is not requiring, as a condition of the agency's approval of the sale, that the buyer operate the property in a manner no less advantageous to residents than the terms of the current 236 program and regulatory agreement.  Therefore, Plaintiffs are entitled to have a reviewing court set aside the sale pursuant to Section 706(2) of the APA.  Alternatively, under Section 706(1) the court may compel HUD to comply with the statute in carrying out the foreclosure.  Under Section 705, the Court may enjoin the sale pending final determination.  Plaintiffs are entitled to declaratory relief pursuant to 5 U.S.C. Section 706 and 42 U.S.C. Section 2201.

## THIRD CAUSE OF ACTION

### HUD's actions are arbitrary and capricious

33.     HUD's actions in proceeding with the sale based on the currently proposed Use Agreement to be imposed on the buyer are arbitrary and capricious because HUD failed to

consider the factors required by its own regulations at 24 C.F.R. Section 27.20 in determining the constraints on the operation of the project to be included in the Use Agreement. HUD's actions are also arbitrary and capricious because HUD failed to provide any reasons for its actions, contrary to the requirements of Section 555(e) of the APA. Therefore, Plaintiffs are entitled to have a reviewing court set aside the sale pursuant to Section 706(2) of the APA. Alternatively, under Section 706(1) the court may compel HUD to comply with its regulations in determining the terms of the foreclosure sale. Under Section 705 of the APA, the Court may enjoin the sale pending final determination. Plaintiffs are entitled to declaratory relief pursuant to 5 U.S.C. Section 706 of the APA and 42 U.S.C. Section 2201.

## FOURTH CAUSE OF ACTION

### HUD's proposed foreclosure violates 12 U.S.C. Section 1701z-11.

34.   HUD's actions in proceeding with the sale based on the currently proposed Use Agreement to be imposed on the buyer are unlawful, arbitrary and capricious because HUD's proposed Use Agreement does not limit rents for all very low income households to 30% of 50% of area median income as required by 12 USC Sections (e)(1)(A)(iii) and (b)(5)(A)(i). Therefore, Plaintiffs are entitled to have a reviewing court set aside the sale pursuant to Section 706(2) of the APA. Alternatively, under Section 706(1) the court may compel HUD to comply with its regulations in determining the terms of the foreclosure sale. Under Section 705 of the APA, the Court may enjoin the sale pending final determination. Plaintiffs are entitled to declaratory relief pursuant to 5 U.S.C. Section 706 of the APA and 42 U.S.C. Section 2201.

## V.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this court issue the following relief:

1. Enter a temporary restraining order and preliminary injunction, pursuant to Fed. R. Civ. P. 65, preventing HUD from completing a foreclosure sale until the Court has made a final determination on the merits.

2. Enter a declaratory judgment against HUD, pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706, that in any foreclosure sale of Shingle Creek Towers, HUD must comply with the requirements of 12 U.S.C. Sections 3706(b) and 1701z-11(k)(2) and impose on the buyer: a) a limitation on rent increases over current levels to those necessary to cover actual and reasonable cost increases; b) a prohibition against termination of tenancies without cause; and c) compliance with tenant organizing and participation requirements set out in 24 C.F.R. Part 245.

3. Alternatively, enter a declaratory judgment against HUD, pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706, that HUD must fully comply with its regulations at 24 C.F.R. Section 27.20 in determining use restrictions to impose on any buyer at a foreclosure sale.

4. Enter a declaratory judgment against HUD, pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706, that in any foreclosure sale of Shingle Creek Towers, HUD must require that rents of any very low income resident not exceed 30% of 50% of area median income.

5. Enter a permanent injunction requiring Defendant HUD to comply with the requirements of 12 U.S.C. Sections 3706(b), 1701z-11(k)(2), and 1701z-11 and the regulations at 24 C.F.R. Section 27.20 in any foreclosure sale of Shingle Creek Towers and impose on the buyer: a) a limitation on rent increases over current levels to those necessary to cover actual and reasonable cost increases; b) a prohibition against termination of tenancies without cause; and c) compliance with tenant organizing and participation requirements set out in 24 C.F.R. Part 245.

6. Award Plaintiffs attorney costs and fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504; and

7.	Grant Plaintiffs such other and further relief as the Court deems necessary and proper.

|  |  |
|---|---|
| | **Respectfully submitted,** |
| Dated: March 22, 2011 | s/John Cann_____ |
| | John Cann (#0174841) |
| | Timothy L. Thompson (#0109447) |
| | **Housing Preservation Project** |
| | 570 Asbury Street, Suite 105 |
| | St. Paul, MN 55104 |
| | 651-642-0102 (Phone) |
| | 651-642-0051 (Fax) |
| | |
| | **ATTORNEYS FOR PLAINTIFFS** |